No. 23-12308

---

**IN THE**
**UNITED STATES COURT OF APPEALS**
**FOR THE ELEVENTH CIRCUIT**

---

FLORIDA STATE CONFERENCE OF BRANCHES AND YOUTH UNITS OF
THE NAACP, et al.,

*Plaintiffs-Appellees,*

v.

CORD BYRD, et al.,

*Defendants-Appellants.*

---

On Appeal from the United States District Court
for the Northern District of Florida

---

### APPELLEES' ANSWER BRIEF

---

Frederick S. Wermuth
KING, BLACKWELL,
ZEHNDER & WERMUTH, P.A.
P.O. Box 1631
Orlando, FL 32802-1631
(407) 422-2472

Abha Khanna
Makeba Rutahindurwa
ELIAS LAW GROUP LLP
1700 Seventh Ave,
Suite 2100
Seattle, WA 98101
(206) 656-0177

Lalitha Madduri
Melinda Johnson
Renata O'Donnell
ELIAS LAW GROUP LLP
250 Massachusetts Ave NW
Suite 400
Washington, DC 20002
(202) 968-4490

*Counsel for Plaintiffs-Appellees Florida State Conference of Branches of Youth
Units of the NAACP, Voters of Tomorrow Action, Inc., Disability Rights Florida,
Alianza for Progress, Alianza Center, UnidosUS, Florida Alliance for Retired
Americans, Santiago Mayer Artasanchez, and Esperanza Sánchez*

*No. 23-12308, NAACP v. Byrd*

## CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1 and Circuit Rule 26.1, Plaintiffs-Appellees certify that Florida State Conference of Branches of Youth Units of the NAACP, Voters of Tomorrow Action, Inc., Disability Rights Florida, Alianza for Progress, Alianza Center, UnidosUS, and Florida Alliance for Retired Americans each has no parent corporation, and no publicly held corporation owns 10% or more of any of those entities' stock. The remaining Plaintiffs-Appellees are individual persons.

Plaintiffs-Appellees further certify that the following have an interest in the outcome of this case:

1.      Adkins, Janet, *Defendant*

2.      Alianza Center, *Plaintiff*

3.      Alianza for Progress, *Plaintiff*

4.      Andersen, Mark, *Defendant*

5.      Anderson, Chris, *Defendant*

6.      Anderson, Shirley, *Defendant*

7.      Arnold, Melissa, *Defendant*

8.      Arrington, Mary Jane, *Defendant*

9.      Artasanchez, Santiago Mayer, *Plaintiff*

10.     Babis, Olivia, *Declarant for Plaintiffs*

*No. 23-12308, NAACP v. Byrd*

11.    Baird, Maureen, *Defendant*

12.    Bardos, Andy, *Counsel for Defendants*

13.    Barton, Kim, *Defendant*

14.    Beato, Michael, *Counsel for Defendant*

15.    Bell, Daniel, *Counsel for Defendant*

16.    Benda, Kyle, *Counsel for Defendant*

17.    Bennett, Michael, *Defendant*

18.    Blazier, Melissa, *Defendant*

19.    Bledsoe, William, *Counsel for Defendant*

20.    Bobanic, Tim, *Defendant*

21.    Boltrek, William, III, *Counsel for Defendants*

22.    Brown, Tomi, *Defendant*

23.    Byrd, Cord, *Defendant*

24.    Cannon, Starlet, *Defendant*

25.    Chambless, Chris, *Defendant*

26.    Chason, Sharon, *Defendant*

27.    Conyers, Grant, *Defendant*

28.    Corley, Brian, *Defendant*

29.    Cowles, Bill, *Defendant*

30.    Darlington, Andrew, *Declarant for Defendants*

*No. 23-12308, NAACP v. Byrd*

31.    Davis, Ashley, *Counsel for Defendant*

32.    Davis, Vicky, *Defendant*

33.    Disability Rights Florida, *Plaintiff*

34.    Doyle, Tommy, *Defendant*

35.    Driggers, Heath, *Defendant*

36.    Dunaway, Carol, *Defendant*

37.    Earley, Mark, *Defendant*

38.    Edwards, Jennifer, *Defendant*

39.    Edwards, Lori, *Defendant*

40.    Erdelyi, Susan, *Counsel for Defendants*

41.    Farnam, Aletris, *Defendant*

42.    Feiser, Craig, *Counsel for Defendant*

43.    Florez, Johana, *Declarant for Plaintiffs*

44.    Florida Alliance for Retired Americans, *Plaintiff*

45.    Florida State Conference of Branches and Youth Units of the NAACP,

       *Plaintiff*

46.    Glickman, Jessica, *Counsel for Defendant*

47.    Griffin, Joyce, *Defendant*

48.    Guzzo, Sophia, *Counsel for Defendant*

49.    Hankins, Christi, *Counsel for Defendant*

*No. 23-12308, NAACP v. Byrd*

50.    Hanlon, John, *Defendant*

51.    Hart, Travis, *Defendant*

52.    Hays, Alan, *Defendant*

53.    Healy, Karen, *Defendant*

54.    Herron, Mark, *Counsel for Defendant*

55.    Hogan, Mike, *Defendant*

56.    Hoots, Brenda, *Defendant*

57.    Hutto, Laura, *Defendant*

58.    Jarone, Joseph, *Counsel for Defendant*

59.    Jazil, Mohammad, *Counsel for Defendant*

60.    Johnson, Diana, *Counsel for Defendant*

61.    Johnson, Melinda, *Counsel for Plaintiffs*

62.    Jonas, Sarah, *Counsel for Defendant*

63.    Jones, Tammy, *Defendant*

64.    Joshi, Raghav, *Declarant for Plaintiffs*

65.    Kahn, Jared, *Counsel for Defendant*

66.    Keen, William, *Defendant*

67.    Khanna, Abha, *Counsel for Plaintiffs*

68.    Kinsey, Jennifer, *Defendant*

69.    Klitsberg, Nathaniel, *Counsel for Defendant*

*No. 23-12308, NAACP v. Byrd*

70.   Knight, Shirley, *Defendant*

71.   Latimer, Craig, *Defendant*

72.   LaVia, John, III, *Counsel for Defendants*

73.   Lenhart, Kaiti, *Defendant*

74.   Lewis, Lisa, *Defendant*

75.   Link, Wendy, *Defendant*

76.   Lux, Paul, *Defendant*

77.   Madduri, Lalitha, *Counsel for Plaintiffs*

78.   Marcus, Julie, *Defendant*

79.   Mari, Frank, *Counsel for Defendants*

80.   Markarian, David, *Counsel for Defendant*

81.   McVay, Bradley R., *Counsel for Defendant*

82.   Meadows, Therisa, *Defendant*

83.   Messer, Ryan, *Defendant*

84.   Milligan, Michelle, *Defendant*

85.   Milton, Christopher, *Defendant*

86.   Moody, Ashley, *Defendant*

87.   Morgan, Joseph, *Defendant*

88.   Morse, Stephanie, *Counsel for Defendant*

89.   Negley, Mark, *Defendant*

*No. 23-12308, NAACP v. Byrd*

90.    Nordlund, Jared, *Declarant for Plaintiffs*

91.    Nweze, Adora Obi, *Declarant for Plaintiffs*

92.    O'Donnell, Renata, *Counsel for Plaintiffs*

93.    Oakes, Vicky, *Defendant*

94.    Osborne, Deborah, *Defendant*

95.    Overturf, Charles, *Defendant*

96.    Perez, Devona Reynolds, *Counsel for Defendant*

97.    Pratt, Joshua, *Counsel for Defendant*

98.    Riley, Heather, *Defendant*

99.    Rudd, Carol, *Defendant*

100.    Rutahindurwa, Makeba, *Counsel for Plaintiffs*

101.    Sanchez, Connie, *Defendant*

102.    Sanchez, Esperanza, *Plaintiff*

103.    Scott, Dale, *Counsel for Defendant*

104.    Scott, Joe, *Defendant*

105.    Seyfang, Amanda, *Defendant*

106.    Shannin, Nicholas, *Counsel for Defendant*

107.    Shaud, Matthew, *Counsel for Defendant*

108.    Sjostrom, Noah, *Counsel for Defendant*

109.    Slater, Cynthia, *Declarant for Plaintiffs*

*No. 23-12308, NAACP v. Byrd*

110. Smith, Diane, *Defendant*

111. Southerland, Dana, *Defendant*

112. Stafford, David, *Defendant*

113. Stewart, Gregory, *Counsel for Defendant*

114. Swain, Robert, *Counsel for Defendant*

115. Swan, Leslie, *Defendant*

116. Todd, Stephen, *Counsel for Defendant*

117. Turner, Ron, *Defendant*

118. UnidosUS, *Plaintiff*

119. Valdes, Michael, *Counsel for Defendant*

120. Valenti, Leah, *Defendant*

121. Van De Bogart, Joseph, *Counsel for Defendant*

122. Vilar, Marcos, *Declarant for Plaintiffs*

123. Villane, Tappie, *Defendant*

124. Voters of Tomorrow Action, Inc., *Plaintiff*

125. Walker, Gertrude, *Defendant*

126. Walker, Mark E., *U.S. District Court Judge*

127. Wermuth, Frederick, *Counsel for Plaintiffs*

128. Whitaker, Henry, *Counsel for Defendant*

129. White, Christina, *Defendant*

130.   Wilcox, Wesley, *Defendant*

Dated: November 13, 2023

<u>*s/ Frederick S. Wermuth*</u>

*Counsel to Plaintiffs-Appellees*

## STATEMENT REGARDING ORAL ARGUMENT

While the challenged provisions in this case implicate significant constitutional rights, the issues raised on appeal are straightforward. Appellees maintain that this appeal can be resolved on the papers based on the statute's clear violations of well-established constitutional law. Appellees recognize, however, that this Court has tentatively scheduled oral argument for the week of January 22, 2024, and welcome the opportunity to participate if the Court determines that oral argument would help facilitate resolution of the appeal.

## TABLE OF CONTENTS

INTRODUCTION ............................................................................................ 1

I.    Factual Background ............................................................................ 3

II.   Procedural background ...................................................................... 4

   A.   Plaintiffs sue and move for preliminary injunction. ................................ 4

   B.   The district court enjoins enforcement of the Citizenship Requirement
       and Information Retention Ban. ................................................................ 6

STANDARD OF REVIEW .............................................................................. 9

SUMMARY OF ARGUMENT ....................................................................... 10

ARGUMENT ................................................................................................... 12

I.    Plaintiffs are substantially likely to succeed on merits............................ 12

   A.   The Citizenship Requirement violates the Equal Protection Clause. .... 13

      1.   Laws classifying individuals on the basis of citizenship are subject to
         strict scrutiny. ....................................................................................... 13

      2.   *United States v. Salerno* does not change the analysis. ...................... 16

      3.   The political function exception does not apply. ................................ 19

      4.   The Citizenship Requirement fails strict scrutiny............................... 23

   B.   The Information Retention Ban is unconstitutionally vague. ................. 26

II.   The district court correctly found the other preliminary injunction factors
    weighed in favor of granting preliminary relief. ...................................... 34

   A.   The district court correctly found that Plaintiffs will suffer irreparable
       harm absent injunctive relief. ................................................................. 34

      1.   The Citizenship Requirement will cause Plaintiffs irreparable
         harm....................................................................................................... 35

      2.   The Information Retention Ban will cause Plaintiffs irreparable
         harm....................................................................................................... 36

   B.   The district court correctly found that the balance of equities weighs in
       Plaintiffs' favor. ...................................................................................... 37

CONCLUSION ................................................................................................ 38

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Access Now, Inc. v. Sw. Airlines Co.*,
    385 F.3d 1324 (11th Cir. 2004) ...................................................16

*Ali v. Fed. Bureau of Prisons*,
    552 U.S. 214 (2008)......................................................................31

*Ambach v. Norwick*,
    441 U.S. 68 (1979).......................................................................20

*Bernal v. Fainter*,
    467 U.S. 216 (1984)...............................................................*passim*

*Cabell v. Chavez-Salido*,
    454 U.S. 432 (1982)..............................................................20, 21

*Campus Commc'ns, Inc. v. Dep't of Revenue*,
    473 So. 2d 1290 (Fla. 1985) .........................................................33

*Carillon Imp., Ltd. v. Frank Pesce Int'l. Grp. Ltd.*,
    112 F.3d 1125 (11th Cir. 1997) ...................................................10

*Cervantes v. Guerra*,
    651 F.2d 974 (5th Cir. 1981) ..................................................21, 22

*City of Chicago v. Morales*,
    527 U.S. 41 (1999)......................................................................33

*Club Madonna Inc. v. City of Miami Beach*,
    42 F.4th 1231 (11th Cir. 2022) ..............................................17, 18

*Democratic Exec. Comm. of Fla. v. Lee*,
    915 F.3d 1312 (11th Cir. 2019) ...................................................37

*Estrada v. Becker*,
    917 F.3d 1298 (11th Cir. 2019) ...................................................14

iii

\* *Examining Bd. v. Flores de Otero*,
    426 U.S. 572 (1976)................................................................14, 16

*Foley v. Connelie*,
    435 U.S. 291 (1978)....................................................................20

*Gary v. City of Warner Robins*,
    311 F.3d 1334 (11th Cir. 2002) ...................................................13

*Glenn v. Brumby*,
    663 F.3d 1312 (11th Cir. 2011) ...................................................24

*Graham v. Richardson*,
    403 U.S. 365 (1971)..............................................................14, 15

\* *In re Griffiths*,
    413 U.S. 717 (1973)..............................................................14, 16

*Henry v. Abernathy*,
    No. 2:21-CV-797-RAH, 2022 WL 17816945 (M.D. Ala. Dec. 19, 2022) ....................................................................................18

*Hisp. Int. Coal. of Ala. v. Governor of Ala.*,
    691 F.3d 1236 (11th Cir. 2012) ...............................................9, 10

*Horton v. City of St. Augustine, Fla.*,
    272 F.3d 1318 (11th Cir. 2001) ...................................................30

*Hurley v. Moore*,
    233 F.3d 1295 (11th Cir. 2000) ...................................................16

*Johnson v. United States*,
    576 U.S. 591 (2015)..............................................................29, 30

*Koe v. Noggle*,
    No. 1:23-CV-2904-SEG, 2023 WL 5339281 (N.D. Ga. Aug. 20, 2023) ....................................................................................19

*Kolender v. Lawson*,
    461 U.S. 352 (1983)....................................................................27

*League of Women Voters of Fla. Inc. v. Fla. Sec'y of State*,
    66 F.4th 905 (11th Cir. 2023) ..........................................27, 28, 29

*LeClerc v. Webb,*
    419 F.3d 405 (5th Cir. 2005) ........................................................14

*Melendez v. Sec'y, Fla. Dep't of Corr.,*
    No. 21-13455, 2022 WL 1124753 (11th Cir. Apr. 15, 2022).......17

*NAACP v. Button,*
    371 U.S. 415 (1963)....................................................................28

*NetChoice, LLC v. Att'y Gen., Fla.,*
    34 F.4th 1196 (11th Cir. 2022) ....................................................37

*Nyquist v. Mauclet,*
    432 U.S. 1 (1977)........................................................................14

*Otto v. City of Boca Raton,*
    981 F.3d 854 (11th Cir. 2020) ....................................................37

*Reider v. Philip Morris USA, Inc.,*
    793 F.3d 1254 (11th Cir. 2015) ..................................................17

*Sapuppo v. Allstate Floridian Ins. Co.,*
    739 F.3d 678 (11th Cir. 2014) ..............................................26, 34

* *Schultz v. Alabama,*
    42 F.4th 1298, 1306 (11th Cir. 2022) .........................................18

*Smith v. Goguen,*
    415 U.S. 566 (1974)....................................................................29

* *Sugarman v. Dougall,*
    413 U.S. 634 (1973)..............................................................14, 16

*United States v. Di Pietro,*
    615 F.3d 1369 (11th Cir. 2010) ..................................................30

*United States v. Magluta,*
    418 F.3d 1166 (11th Cir. 2005) ..................................................34

*United States v. Salerno,*
    481 U.S. 739 (1987)..............................................................16, 17

* *Village of Hoffman Estates v. Flipside, Hoffman Ests., Inc.*,
   455 U.S. 489 (1982).................................................................27, 29

*Wollschlaeger v. Governor, Fla.*,
   848 F.3d 1293 (11th Cir. 2017) (en banc) .............................27, 28

*Wreal, LLC v. Amazon.com, Inc.*,
   840 F.3d 1244 (11th Cir. 2016) .....................................................10

**Statutes**

18 U.S.C. § 2725 ................................................................................30

18 U.S.C. § 3142(e) ..........................................................................17

Fla. Stat. § 97.0575 ....................................................................*passim*

Fla. Stat. § 99.061(5)........................................................................21

Fla. Stat. § 119.0712(2)(b) ..............................................................30

Fla. Stat. § 322.143(1)(a) ................................................................30

Fla. Stat. § 501.171(1)(g) ................................................................30

**Other Authorities**

Fla. Admin. Code 1S-2.042 .............................................................33

Fla. Const. art. V, § 21 .....................................................................31

U.S. Const. amend. XIV ...................................................................13

## INTRODUCTION

After the Florida Legislature hastily enacted a host of sweeping restrictions on third-party voter registration organizations ("3PVROs") with Senate Bill 7050, Plaintiffs sought to preliminarily enjoin enforcement of two provisions that threatened them with immediate and irreparable injury—the Citizenship Requirement, Fla. Stat. § 97.0575(1)(f), which bans all noncitizens from handling voter registration applications on behalf of 3PVROs, and the Information Retention Ban, Fla. Stat. § 97.0575(7), which prohibits 3PVROs from retaining undefined "personal information" in undefined circumstances. After briefing and oral argument, the district court determined that Plaintiffs—five Florida 3PVROs and two individual noncitizens—were likely to succeed on their Fourteenth Amendment challenges to both provisions. Indeed, the plain statutory text compels that conclusion.

The Citizenship Requirement unambiguously bans *all* noncitizens from engaging in canvassing work on behalf of 3PVROs. It is hard to imagine a clearer example of facial discrimination on the basis of alienage, which the Supreme Court has consistently held triggers strict scrutiny under its equal protection jurisprudence. And the Information Retention Ban violates the Due Process Clause because, on its face, it subjects 3PVROs to the threat of criminal prosecution without clearly defining what conduct it prohibits. 3PVROs and their employees and volunteers are

left to guess at what they can and cannot do with voter information pursuant to their missions; if they guess wrong, they risk a felony conviction.

Rather than defend these provisions of Senate Bill 7050 as written, Florida's Secretary of State and Attorney General (together, the "State") seek to rewrite it: to find in their favor, the Court would have to read in distinctions and details found nowhere in the statutory text. For example, the Citizenship Requirement's plain text imposes a sweeping ban on *all* noncitizens—without exception—yet the State invites the Court to parse the Requirement to delineate different categories of noncitizens. Similarly, the State's argument relating to the Information Retention Ban relies on reading definitions into the text that simply are not there. Binding precedent forecloses the State's attempt to rewrite the law by adding subclassifications and clarity that do not exist in the text. The district court thus properly found that Plaintiffs are likely to succeed on the merits of their Fourteenth Amendment claims.

The district court also did not abuse its discretion by finding that Plaintiffs satisfied the remaining factors necessary for a preliminary injunction. Plaintiffs include not only 3PVROs directly targeted by the new law, but noncitizens themselves, including one who currently works for a 3PVRO conducting voting registration who will no longer be able to do so under the plain terms of the Citizenship Requirement. These organizations rely on noncitizen participation to

further their missions and will have to either divert substantial resources to attempt to address this injury or cease voter registration operations altogether. Separately, the criminal threat imposed by the Information Retention Ban also directly injures these organizations—to avoid the risk of criminal prosecution of their employees and volunteers, they must avoid retaining information that is *vital* to their get-out-the-vote efforts. The omnipresent threat posed by the Ban further endangers their ability to recruit and retain employees and volunteers, making it harder for the organizations to spread their message and achieve their mission.

The State, for its part, fails to articulate any countervailing harm that it will suffer from preserving the status quo and keeping the injunction in place. This is not surprising; during the legislative session, lawmakers could not identify a *single instance* of unlawful registration activity based on noncitizen participation or theft of voters' personal information on behalf of 3PVROs that retained the information.

This Court should affirm.

## STATEMENT OF THE CASE

## I.    Factual Background

Florida's enactment of SB 7050 implemented sweeping changes to the laws governing 3PVROs. This appeal involves two of those changes. First, SB 7050's Citizenship Requirement mandates that 3PVROs affirm "that each person collecting or handling voter registration applications" on their behalf "is a citizen of the United

States of America," subjecting the 3PVROs to a $50,000 fine "for each such person who is not a citizen." Fla. Stat. § 97.0575(1)(f). Second, SB 7050's Information Retention Ban prohibits 3PVRO canvassers from "retain[ing] a voter's personal information . . . for any reason other than to provide such application or information to the [3PVRO] in compliance with this section" under risk of felony conviction. Fla. Stat. § 97.0575(7).[1]

The Legislature heard testimony from 3PVROs, constituents, and lawmakers alike vocally opposing SB 7050. *See, e.g.*, App., Dkt. 32-1, at 195, 198–99. Rather than grapple with these issues, the legislature pushed SB 7050 through each chamber, where it was approved on a party-line vote. Governor DeSantis signed SB 7050 into law on May 24, 2023. *See* Florida Senate, *CS/SB 7050: Elections*, https://www.flsenate.gov/Session/Bill/2023/7050 (last visited Nov. 12, 2023).

## II. Procedural background

### A. Plaintiffs sue and move for preliminary injunction.

Shortly after Governor DeSantis signed SB 7050, Plaintiffs Florida NAACP, UnidosUS, Alianza, Voters of Tomorrow, and Disability Rights Florida filed suit

---

[1] Plaintiffs' complaint also challenges Fla. Stat. § 97.0575(5)(a) ("3PVRO Fines Provision"), which significantly increases the fines imposed on 3PVROs for late-returned applications and applications returned to the wrong county. Appendix (App.), Dkt. 32-1, at 79–82. Plaintiffs did not seek to preliminarily enjoin that provision, however, and accordingly that issue was not addressed by the district court's preliminary injunction order and is not before this Court. App., Dkt 32-1, at 129 n.1.

4

challenging the Citizenship Requirement, Information Retention Ban, and 3PVRO Fines Provision. App., Dkt. 32-1, at 29.[2] Plaintiffs moved for a preliminary injunction on June 9, 2023, on only two of these provisions—the Citizenship Requirement and the Information Retention Ban. App., Dkt. 32-1, at 115.

Two weeks later, the Secretary initiated rulemaking in an attempt to interpret SB 7050's text. *See* Florida Department of State, *Florida Administrative Code & Florida Administrative Register*, Rule 1S-2.042, https://www.flrules.org/gateway/ruleno.asp?id=1S-2.042 (last visited Nov. 12, 2023). The State then sought to delay judicial review based on the rulemaking, filing a response in opposition to Plaintiffs' preliminary injunction motion arguing, among other things, that the district court should stay consideration of Plaintiffs' motion until the rulemaking concluded. *See* App., Dkt. 32-2, at 52–53.

On June 28, 2023, the district court held oral argument on Plaintiffs' preliminary injunction motion.[3] During the argument, Defendants conceded that they could not identify a single instance where a noncitizen engaged in any kind of "bad acts" related to voter registration. App., Dkt. 32-8, at 135. And while

---

[2] Plaintiffs amended their complaint on June 9, 2023 to add individual plaintiffs Esperanza Sánchez and Santiago Mayer as parties. *See* App., Dkt. 32-1, at 46–113 (First Amended Complaint).

[3] The hearing was consolidated with preliminary injunction hearings in two related cases, *Hispanic Federation, et al. v. Byrd, et al.*, No.: 4:23-cv-00218 (N.D. Fla.), and *League of Women Voters of Florida, et al. v. Byrd, et al.*, No.: 4:23-cv-00216 (N.D. Fla.).

Defendants maintained that the Secretary's rulemaking would resolve any ambiguities in the Information Retention Ban, they conceded that the consequence of an inadvertent violation is "a pretty big deal." App., Dkt. 32-8, at 143–44.

### B. The district court enjoins enforcement of the Citizenship Requirement and Information Retention Ban.

On July 3, 2023, the district court granted the preliminary injunction in a thorough 58-page opinion. App., Dkt. 32-7, at 117. First, the court rejected the State's attempt at delay, finding that the State had made no showing that resolution of the preliminary injunction motion would interfere with the rulemaking proceeding. App., Dkt. 32-7, at 124–27.[4]

The district court further concluded that Plaintiffs had shown a substantial likelihood of success on the merits. After determining that Plaintiffs had established standing to challenge both the Citizenship Requirement and the Information Retention Ban, the court turned to the substance of Plaintiffs' claims.[5] As to the Citizenship Requirement, the district court concluded that the statute's facial classification based on alienage triggered strict scrutiny. App., Dkt. 32-7, at 146. In

---

[4] The State does not challenge this portion of the district court's order on appeal. Indeed, the State proceeded with the course of its rulemaking, which took effect on September 26, 2023. *See* Florida Department of State, *Florida Administrative Code & Florida Administrative Register*, Rule 1S-2.042, https://www.flrules.org/gateway/ruleno.asp?id=1S-2.042 (last visited Nov. 12, 2023).

[5] The State does not challenge Plaintiffs' standing on appeal.

so holding, the court rejected the State's request to parse the Citizenship Requirement into two different categories of review—one for undocumented noncitizens and one for noncitizens with legal status—because the State could not identify any authority that permitted the court to "take a scalpel to the statutory text and divide a subclassification of 'illegal aliens' from separate sub-classifications of lawful residents when the Florida legislature declined to be so precise." App., Dkt. 32-7, at 144–45. Instead, the court concluded that "the Florida Legislature means what it says—*all* noncitizens, not just illegal aliens, are subject to this provision," such that the court could apply only one level of scrutiny to the Citizenship Requirement's classification. App., Dkt. 32-7, at 145. The court also rejected the State's argument that the "political function" exception to strict scrutiny applied to the Citizenship Requirement. App., Dkt. 32-7, at 148–49.

After concluding that strict scrutiny applied, the court turned to the State's interest in the Citizenship Requirement. Although the State did "not even attempt to demonstrate how the citizenship requirement satisfies strict scrutiny" in their briefs, App., Dkt. 32-7, at 150, the State argued at the preliminary injunction hearing that the Requirement was justified by the State's interest in ensuring voter registration applications are returned on time, App., Dkt. 32-7, at 150. But as the court found, the State provided no evidence of noncitizens leaving the country before returning applications. App., Dkt. 32-8 at 99, 135. When the court directly asked counsel for

the Secretary to "point [him] to a single sentence or paragraph" of evidence submitted "that talks about resident aliens engaged in some kind of bad acts that undermine the voter registration process," counsel responded that he could identify no example "of a resident alien who was specifically charged with doing something improper in the voter registration process." App., Dkt. 32-8, at 135. Because the State had not identified "any connective tissue between the problem and the state's proposed solution," App., Dkt. 32-7, at 151, the court concluded that Plaintiffs are substantially likely to succeed on their claim that the Citizenship Requirement violates the Equal Protection Clause, App., Dkt. 32-7, at 153.

As to the Information Retention Ban, the court held that the Ban is unconstitutionally vague because it fails to provide notice of what behavior is prohibited and encourages arbitrary and discriminatory enforcement. App., Dkt. 32-7, at 154; *see also* App., Dkt. 32-7, at 165–66 (noting that the statutory language "is so devoid of meaning that it cannot possibly give people of ordinary intelligence fair notice of what information they are allowed to retain and for what purposes they may do so"). The court found that "the Florida Legislature has drafted a criminal statute that contemplates *some* individuals retaining *some* information for *some* undefined purpose," App., Dkt. 32-7, at 165, and the State did not have the authority to rewrite the statute through rulemaking "to cure its vagueness," App., Dkt.32-7, at 166. As a result, the court held that Plaintiffs established a substantial likelihood of

success on the merits of their vagueness challenge to the Information Retention Ban. App., Dkt. 32-7, at 166.[6]

The district court further determined that the remaining preliminary injunction factors weighed in favor of granting Plaintiffs' motion for the preliminary injunction. App., Dkt. 32-7, at 167. In particular, the court found that Plaintiffs would suffer irreparable harm without the injunction because their voter registration processes would be "substantially interrupted" by the Citizenship Requirement and Information Retention Ban, App., Dkt. 32-7, at 167, while the State had "no legitimate interest" in enforcing an unconstitutional statute, App., Dkt. 32-7, at 168.

On July 11, 2023, the State noticed its appeal to this Court. App., Dkt. 32-1, at 40.

## STANDARD OF REVIEW

This Court reviews a district court's grant of a preliminary injunction for abuse of discretion. *Hisp. Int. Coal. of Ala. v. Governor of Ala.*, 691 F.3d 1236, 1242 (11th Cir. 2012). "Appellate review of a preliminary-injunction decision in particular is exceedingly narrow" and "deferential" due to "the expedited nature of the

---

[6] In addition to these claims, Plaintiffs also argued that the Citizenship Requirement and Information Retention Ban violate the First Amendment and are unconstitutionally overbroad. Because the district court found Plaintiffs were likely to succeed on their equal protection and due process challenges, it did not reach the other claims in deciding the preliminary injunction motion. *See, e.g.*, App., Dkt. 32-7, at 142.

proceedings in the district court." *Wreal, LLC v. Amazon.com, Inc.*, 840 F.3d 1244, 1248 (11th Cir. 2016) (citations omitted). The underlying legal issues are reviewed *de novo*, and factual determinations for clear error. *Hisp. Int. Coal. of Ala.*, 691 F.3d at 1242.

A plaintiff is entitled to a preliminary injunction if they establish that (1) they have a substantial likelihood of success on the merits; (2) they will suffer irreparable harm absent relief; (3) any harm defendants may face from issuing the injunction is outweighed by the harm to plaintiffs; and (4) the injunction will not disserve the public interest. *Carillon Imp., Ltd. v. Frank Pesce Int'l. Grp. Ltd.*, 112 F.3d 1125, 1126 (11th Cir. 1997).

## SUMMARY OF ARGUMENT

The district court did not abuse its discretion in concluding that Plaintiffs satisfied the relevant factors for a preliminary injunction. On the merits of Plaintiffs' equal protection challenge to the Citizenship Requirement, the district court correctly applied strict scrutiny based on clear Supreme Court precedent and found that the law is not narrowly tailored to serve a compelling state interest. Relying on language from *United States v. Salerno*, the State argues for the first time on appeal that Plaintiffs must demonstrate that there is no set of circumstances under which the challenged provisions are constitutional. Even if the State had not waived this argument by failing to raise it below, it is wrong as a matter of law. Both the Supreme

Court and this Court have clarified that *Salerno*'s no-set-of-circumstances framework does not alter or impose additional burdens on Plaintiffs in satisfying the relevant constitutional test. And because voter registration canvassers do not engage in policymaking or exercise discretion in imposing public policy over others, the political function exception to strict scrutiny does not apply.

On the merits of Plaintiffs' vagueness challenge to the Information Retention Ban, the district court correctly concluded that the undefined terms such as "personal information" did not provide sufficient notice of prohibited conduct, particularly in light of the criminal penalties imposed. The district court also correctly rejected that the State's rulemaking could "clarify" the statute in order to save it. If anything, the State's administrative rule attempting to fill the gaps in the statutory text only underscores the statute's vagueness.

As to the remaining preliminary injunction factors, the district court did not abuse its discretion in finding that they all favor an injunction. The balance of hardships tips strongly in Plaintiffs' favor. Absent an injunction, organizational Plaintiffs will suffer irreparable harm in the form of disruption—and in some cases cessation—of vital voter registration activities, and Plaintiff Esperanza Sánchez risks losing her employment if the Citizenship Requirement goes into effect. The State, meanwhile, musters no argument whatsoever on the equities, all but conceding

that neither the State nor the public interest is harmed by preservation of the status quo pending trial.

This Court should affirm the district court's preliminary injunction barring the State's enforcement of the Citizenship Requirement and Information Retention Ban.

## ARGUMENT

The district court did not abuse its discretion in issuing a preliminary injunction here. Plaintiffs are substantially likely to succeed on the merits of both their equal protection challenge to the Citizenship Requirement and their due process challenge to the Information Retention Ban. The remaining preliminary injunction factors are not even in dispute on appeal, and for good reason: Plaintiffs will suffer severe, irreparable harm absent an injunction; the State will suffer no harm from the injunction, which merely maintains the status quo, much less any harm that can outweigh the serious, irreparable harm that will befall Plaintiffs; and the public interest demands that the injunction remain in place.

## I.    Plaintiffs are substantially likely to succeed on merits.

The plain language of the statutory provisions at issue confirms their constitutional invalidity. The Citizenship Requirement facially discriminates based on alienage without a compelling state interest, while the Information Retention Ban vaguely prohibits retention of "personal information" under threat of criminal prosecution. The State's argument on appeal relies on significant revisions to the

plain language of both of these provisions, but neither Appellants nor this Court has the authority to make these statutory revisions. The district court thus correctly found that Plaintiffs are substantially likely to succeed on the merits of their challenges to both provisions.

### A.    The Citizenship Requirement violates the Equal Protection Clause.

The Equal Protection Clause of the Fourteenth Amendment prohibits states from "deny[ing] to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV. "When legislation classifies [similarly situated] persons in such a way that they receive different treatment under the law, the degree of scrutiny the court applies depends upon the basis for the classification." *Gary v. City of Warner Robins*, 311 F.3d 1334, 1337 (11th Cir. 2002). Because the Citizenship Requirement facially classifies on the basis of citizenship, it is subject to strict scrutiny. Rather than contend that the Citizenship Requirement satisfies strict scrutiny, the State misinterprets binding precedent in an attempt to invoke a more lenient standard of review. This attempt fails, and with it so does the Citizenship Requirement.

### 1.    Laws classifying individuals on the basis of citizenship are subject to strict scrutiny.

The Supreme Court has consistently held that "[a]s a general matter, a state law that discriminates on the basis of alienage can be sustained only if it can

13

withstand strict judicial scrutiny." *Bernal v. Fainter*, 467 U.S. 216, 219 (1984); *see also Examining Bd. v. Flores de Otero*, 426 U.S. 572, 601–02 (1976) (applying "strict judicial scrutiny" for limitations on state civil engineering licenses based on alienage); *Sugarman v. Dougall*, 413 U.S. 634, 642 (1973) (applying "close scrutiny" to statute "which denies all aliens the right to hold positions in New York's classified competitive civil service"); *In re Griffiths*, 413 U.S. 717, 721 (1973) (applying strict scrutiny to a state law that excluded aliens from being licensed as attorneys); *Nyquist v. Mauclet*, 432 U.S. 1, 12 (1977) (applying "close judicial scrutiny" to strike down law banning certain classes of noncitizens from college loan assistance program). In so holding, the Supreme Court has recognized that "aliens as a class are a prime example of a 'discrete and insular' minority for whom such heightened judicial solicitude is appropriate." *Graham v. Richardson*, 403 U.S. 365, 376 (1971) (applying "strict judicial scrutiny" to strike down a state law denying resident aliens disability benefits).

While some federal circuit courts, including this one, have applied lower levels of scrutiny to laws that regulate *only undocumented* noncitizens, *see, e.g.*, *Estrada v. Becker*, 917 F.3d 1298, 1301 (11th Cir. 2019) (applying rational basis review to statute prohibiting individuals "not lawfully in the United States" from attending certain Georgia universities); *LeClerc v. Webb*, 419 F.3d 405, 410 (5th Cir. 2005) (applying rational basis review to requirement that individuals be "a

citizen of the United States or a resident alien thereof" to be admitted to the bar), the Citizenship Requirement bars *all noncitizens* from engaging in voter registration, without exception, *see* Fla. Stat. § 97.0575(1)(f) (requiring "affirmation that each person collecting or handling voter registration applications on behalf of the third-party voter registration organization is a citizen of the United States of America"). Its categorical restriction on all noncitizens is thus the emblematic "classification[] based on alienage" that triggers strict scrutiny. *Graham*, 403 U.S. at 372.

The State does "not dispute that the citizenship requirement, on its face, discriminates against all noncitizens." App., Dkt. 32-7, at 144. Instead, the State urges the Court to read into the statute distinctions among different noncitizen subgroups that the text of the law plainly does not make, and then apply different levels of scrutiny to each of them. As the district court recognized, the State has cited no authority supporting such an approach. App., Dkt. 32-7, at 144–45.

Indeed, the Supreme Court *declined* to undertake this proposed bifurcated review in *Bernal v. Fainter*, where it struck down a law prohibiting all noncitizens from serving as notaries. 467 U.S. at 218–20. There, as here, the legislature *could have* distinguished between different categories of noncitizens, such as legal permanent residents and undocumented immigrants, but instead chose to classify all noncitizens with the same broad brush. *Id.* at 218. As a result, the text of the statute

15

demanded that the Court apply a single standard of review—strict scrutiny—to evaluate the plaintiffs' facial challenge to the statute. *Id.* at 227–28.

*Bernal* is not the only example of the Supreme Court applying strict scrutiny to a statute that on its face makes no distinction between different classifications of noncitizens. *Sugarman*, *Griffiths*, and *Examining Board* all involved laws that, like the Citizenship Requirement, expressly and categorically distinguished between citizens and noncitizens, and in each case the Supreme Court applied strict scrutiny to strike down the alienage-based classification. *Sugarman*, 413 U.S. at 642; *Griffiths*, 413 U.S. at 721; *Examining Bd.*, 426 U.S. at 601–02. Based on this clear and consistent precedent, the district court did not err in rejecting the State's invitation to "take a scalpel to the statutory text" and apply two different standards of scrutiny to a single statutory classification, App., Dkt. 32-7, at 144. The court properly applied strict scrutiny to the Citizenship Requirement.

### 2. *United States v. Salerno* does not change the analysis.

The State now contends—for the first time on appeal—that the "no set of circumstances" language in *United States v. Salerno*, 481 U.S. 739, 745 (1987), required the district court to apply the bifurcated standards approach for which it advocates. Because the State failed to make this argument before the district court below, it is waived and not properly before this Court. *See, e.g.*, *Access Now, Inc. v. Sw. Airlines Co.*, 385 F.3d 1324, 1331 (11th Cir. 2004); *Hurley v. Moore*, 233 F.3d

1295, 1297 (11th Cir. 2000); *see also Reider v. Philip Morris USA, Inc.*, 793 F.3d 1254, 1258 (11th Cir. 2015) ("Issues raised for the first time on appeal are generally forfeited because the district court did not have the opportunity to consider them"); *Melendez v. Sec'y, Fla. Dep't of Corr.*, No. 21-13455, 2022 WL 1124753, at *16 n.6 (11th Cir. Apr. 15, 2022) (declining to address argument not raised during preliminary injunction briefing or hearing).

In any event, the State's new argument is meritless. *Salerno* considered a challenge to the Bail Reform Act, a federal pretrial detention statute that *on its face* "careful[ly] delineat[ed] . . . the circumstances under which detention will be permitted." 481 U.S. at 750–51; *see also* 18 U.S.C. § 3142(e) (Bail Reform Act). The Citizenship Requirement, by contrast, makes *no* distinction at all—let alone a "careful delineation"—between lawful residents and undocumented immigrants. Instead, it broadly targets all noncitizens for discriminatory treatment. In other words, the *Salerno* Court did *not* do what the State argues the district court should have done here: apply different levels of scrutiny based on distinctions that do not exist in the statute.

In addition, this Court has previously—and recently—rejected the argument that the Supreme Court's decision in *Salerno* modifies the test applied to facial constitutional challenges. Specifically, in *Club Madonna Inc. v. City of Miami Beach*, 42 F.4th 1231, 1256 (11th Cir. 2022), this Court squarely rejected the

argument that a plaintiff asserting a facial challenge must show that "the law is invalid in all circumstances," explaining that this argument "misstates the law governing facial challenges." As the Court explained, "*Salerno* is correctly understood not as a separate test applicable to facial challenges, but a description of the outcome of a facial challenge in which a statute fails to satisfy the appropriate constitutional framework." *Id.* (citing *Doe v. City of Albuquerque*, 667 F.3d 1111, 1123 (10th Cir. 2012)). As a result, "the question that *Salerno* requires us to answer is" the same as it has always been—that is, "whether the statute fails the relevant constitutional test." *Id*. In *Club Madonna*, the "relevant constitutional test" for evaluating the preemption challenge was the "standard for federal conflict preemption." *Id.* Here, "the relevant constitutional test" for Plaintiffs' equal protection challenge to the Citizenship Requirement's express classification based on alienage is strict scrutiny. *See supra* at Section I.A.1.

Consistent with this approach, in *Schultz v. Alabama*, this Court analyzed a facial equal protection and due process challenge to Alabama's county bail policy using the established constitutional tests for such claims. 42 F.4th 1298, 1306 (11th Cir. 2022). The Court expressly declined to reject the facial equal protection challenge on the grounds that it "could be applied constitutionally in some hypothetical scenario," as the State proposes here; instead, it "determined and then applied 'the relevant constitutional test[]' to the challenged policy." *Henry v.*

*Abernathy*, No. 2:21-CV-797-RAH, 2022 WL 17816945, at *8 (M.D. Ala. Dec. 19, 2022) (analyzing *Schultz*). The district court's approach below was entirely consistent with this recent precedent. App., Dkt. 32-7, at 149–50.[7]

### 3.    The political function exception does not apply.

The political function exception does not save the Citizenship Requirement from strict scrutiny. The political function exception is "a narrow exception to the rule that discrimination based on alienage triggers strict scrutiny" that applies only to "persons holding state elective or important nonelective executive, legislative, and judicial positions" who "participate directly in the formulation, execution, or review of broad public policy." *Bernal*, 467 U.S. at 220–22. To determine whether a restriction fits within the narrow political function exception, courts employ a two-part framework: (1) whether a classification is over or underinclusive and, if not, (2) whether the position at issue "necessarily exercise[s] broad discretionary power over the formulation or execution of public policies importantly affecting the citizen population." *Id.* at 224. Here, the Citizenship Requirement does not implicate the type of discretionary power subject to the political function exception.

---

[7] Other district courts in this circuit have understood this Court's precedent and applied it similarly. *See, e.g.*, *Koe v. Noggle*, No. 1:23-CV-2904-SEG, 2023 WL 5339281, at *28 (N.D. Ga. Aug. 20, 2023) (finding that hormone-therapy ban "'fails the relevant constitutional inquiry' because its sex-based legislative scheme does not survive intermediate scrutiny").

19

The district court properly found that the Citizenship Requirement fails the second prong of the *Bernal* test.[8] As *Bernal* explained, personnel "to whom the political-function exception is properly applied . . . are invested either with policymaking responsibility or broad discretion in the execution of public policy that requires the routine exercise of authority over individuals." *Id.* at 226. In accordance with this standard, the Supreme Court has exempted from strict scrutiny restrictions on limited positions that "go to the heart of representative government," like police officers, public school teachers, and parole officers. *See Foley v. Connelie*, 435 U.S. 291 (1978); *Ambach v. Norwick*, 441 U.S. 68 (1979); *Cabell v. Chavez-Salido*, 454 U.S. 432 (1982). Plaintiffs' canvassers, by contrast, have no policymaking responsibility, exercise no discretion to enforce or influence policy, and wield no power or authority over anyone else.

The State cannot and does not argue otherwise; in fact, it *conceded* this point in briefing below. App., Dkt. 32-2, at 71 (noting "those who collect and handle completed applications aren't vested with discretion or engage in policy making"). Instead, the State attempts to expand this "narrow exception" to swallow the rule

---

[8] While the district court did not need to consider whether the Requirement also fails the first prong, the record also supports a conclusion that the Citizenship Requirement is underinclusive because it bars noncitizens from collecting or handling voter registration applications on behalf of 3PVROs while allowing noncitizen postal workers and other state agency employees to handle or collect these applications. *See* App., Dkt. 32-7, at 147.

that states may not discriminate on the basis of alienage. The State's argument is built on a teetering tower of attenuated steps: because 3PVROs deliver voter registration applications to election offices, they are "cogs in the wheel of the election administration process," and because policy is set through elections, the "function" of their role is "political" and thus the exception applies. Br. at 21.

But the political function exception does not broadly encompass any activity that touches upon the political process in any possible way. It is very clearly and squarely limited to those who have "policymaking responsibility" or "broad discretion in the execution of public policy." *Bernal*, 467 U.S. at 226. Nor is it at all clear what—if any—limiting principle would apply to the State's broad construction. Indeed, by the State's logic, the notary law at issue in *Bernal* would have come within the political function exception by the mere fact that notaries have authority to certify election-related documents. *See, e.g.*, Fla. Stat § 99.061(5) (allowing notaries to administer oaths for candidate disclosures). But individuals to whom the political function exception applies must "participate *directly*," not tangentially, in public policy execution, performing "functions that go to the heart of representative government." *Cabell*, 454 U.S. at 440.

While the State relies heavily on *Cervantes v. Guerra*, 651 F.2d 974 (5th Cir. 1981), that case only confirms the distinctions applied in *Bernal*. In *Cervantes*, the Community Action Agency board of directors exercised "discretionary

21

decisionmaking" and "broad powers" to "create policy" in allocating five to ten million dollars of public funds. *Id.* at 981–82. In this capacity, the board administered government-funded programs that "*directly* affect[ed]" the county's residents. *Id.* at 982 (emphasis added); *see also id.* (noting that "even more than a policeman, . . . or a public school teacher," the board of directors' "choices have profound effects on the community"). As a result, the Fifth Circuit concluded that "[s]ervice on that board" is a "function that 'goes to the heart of representative government.'" *Id.*

Florida's 3PVROs, by contrast, are not state-funded entities and have no responsibility for allocating public funds or otherwise executing—let alone developing—public policy on behalf of the government. As such, Plaintiffs' canvassers are far more like the notaries in *Bernal*, a position the Supreme Court held could not constitutionally be limited to citizens. 467 U.S. at 227–28. Like notaries, canvassers do not wield government power or authority or exercise discretion to enforce or influence policy. And although "considerable damage could result from the negligent or dishonest performance of" a notary or a canvasser's work, the same is true for "numerous other categories of personnel upon whom we depend for careful, honest service" that are not "invested either with policymaking responsibility or broad discretion in the execution of public policy that requires the routine exercise of authority over individuals." *Id*. at 225–26.

22

Accordingly, the political function exception does not apply, and the Citizenship Requirement is subject to strict scrutiny.

### 4.    The Citizenship Requirement fails strict scrutiny.

The State does not even attempt to argue that the Citizenship Requirement can survive strict scrutiny. Indeed, the State expressly concedes that it cannot constitutionally be applied to permanent resident aliens. Br. at 17 ("Applied to permanent resident aliens, such a statute might well fail strict scrutiny."). And while it feebly offers that it has a "rational basis, tied to a legitimate purpose" for the exclusion of those with "illegal or temporary status," Br. at 15, it does not—and cannot—contend that the Citizenship Requirement is narrowly tailored to a compelling state interest in light of the utter lack of any "factual underpinning" in the legislative record to justify facial discrimination against a suspect class. App., Dkt. 32-7, at 153 (quoting *Bernal*, 467 U.S. at 228). *Compare also* App., Dkt. 32-8, at 136–37 (State counsel conceding, "Was it a perfect fit? No" in response to questions about how the Citizenship Requirement responds to concerns about noncitizens voting), *with* App., Dkt. 32-7, at 152–53 (holding that the Citizenship Requirement is "not the least restrictive means to tackle the problem of later voter application submissions" and rejecting "Defendants' 'good enough' approach to justifying discrimination in this case").

During the hearings on SB 7050, legislators offered no justification for this provision. When directly asked what purpose the Citizenship Requirement serves, SB 7050's sponsor responded only that "there are certain rights in our country that only citizens get to enjoy." App., Dkt. 32-1, at 208. Nor did any legislator identify any evidence of noncitizens—permanent resident or otherwise—mishandling voter registration applications. *See* App., Dkt. 32-1, at 204–05; *see also* App., Dkt. 32-1, at 195 (Rep. Eskamani noting there was "no evidence . . . that the individuals outlined in the current bill are dangerous or untrustworthy"). The district court correctly found—and the State does not dispute—that "[w]ithout a factual underpinning, the State's asserted interest lacks the weight [the Supreme Court has] required of interests properly denominated as compelling." App., Dkt. 32-7, at 153 (quoting *Bernal*, 467 U.S. at 228).

During oral argument before the district court, and again here, the State suggests that the restriction is justified by the threat that non-permanent residents "may leave the country voluntarily or involuntarily any day and without warning," Br. at 15; *see also* App., Dkt. 32-8, at 136 ("[I]t's more likely that someone who is not bound to the community, as a U.S. citizen would be, is going to be more prone to submitting something in an untimely basis."). But the State cannot invent justifications for the Citizenship Requirement after the fact and expect the law to withstand strict scrutiny. *See Glenn v. Brumby*, 663 F.3d 1312, 1316 (11th Cir. 2011)

(holding that justifications for suspect classifications must be "genuine," not "hypothesized or invented *post hoc* in response to litigation" (quoting *United States v. Virginia*, 518 U.S. 515, 533 (1996)). In any event, as the district court noted, the State offered no evidence that noncitizens as a class are more likely to leave the country on a whim. App., Dkt. 32-7, at 150. To the contrary, many non-permanent residents including "asylum seekers" referenced by the State, Br. at 14, have restrictions on their ability to travel internationally and need to seek permission to leave through a detailed process, such as applying for a refugee travel document. *See* USCIS, "How do I get a refugee travel document?," available at https://www.uscis.gov/sites/default/files/document/guides/D4en.pdf. And "student visa holders," Br. at 14, who have worked hard to obtain the opportunity to pursue educational opportunities in this country, have no incentive to up and leave at a moment's notice. The State's suggestion that "temporary" noncitizens' presence in this country is so fleeting that they are liable to disappear in the ten days between receiving a voter's registration application and delivering it to election officials is entirely unsupported by evidence, argument, or logic. As the district court held, "such shoddy tailoring between restriction and government interest presents a

dubious fit under rational basis review, and it falls woefully short of satisfying the strict scrutiny this Court must apply." App., Dkt. 32-7, at 172.[9]

For all of these reasons, Plaintiffs are substantially likely to succeed on their claim that the Citizenship Requirement violates the Equal Protection Clause. The Citizenship Requirement is a blunt instrument that broadly discriminates against all noncitizens and therefore triggers—and fails—strict scrutiny.

### B.    The Information Retention Ban is unconstitutionally vague.

The Information Retention Ban provides vague prohibitions on 3PVROs retaining voter information alongside harsh criminal penalties for those who inadvertently violate the law, thereby severely limiting 3PVROs' ability to conduct voter registration and mobilization. Plaintiffs reach out to voters after registering them for three primary reasons: (1) to help correct any errors on their registration application, App., Dkt. 32-1, at 215–16; App., Dkt. 32-2, at 15–16; (2) to provide information about voting and encourage them to get out and vote, App., Dkt. 32-1, at 216, 228; App., Dkt. 32-2, at 6, 12–16, 35, 38–39; and (3) to engage them in

---

[9] The district court also correctly rejected the State's secondary post hoc rationale that the Citizenship Requirement promotes voter integrity, finding that it failed to satisfy the strict scrutiny standard because there was no evidence offered as to why banning noncitizens from canvassing would promote this interest. App., Dkt. 32-7, at 152–53. The State has abandoned that argument on appeal by failing to raise it in its opening brief. *Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 680–83 (11th Cir. 2014) (determining that appellants abandoned challenge to district court's alternative bases for ruling against them by failing to brief those issues on appeal).

community and civic events orchestrated by the organization and partners, App., Dkt. 32-1, at 228; App., Dkt. 32-2, at 6, 12–16, 35, 38–39. The Information Retention Ban fails to give Plaintiffs notice about what they can or cannot do under the law without risking significant criminal consequences, nor does it provide sufficient protection against arbitrary enforcement, "making this provision vague to the point of unconstitutionality." *League of Women Voters of Fla. Inc. v. Fla. Sec'y of State*, 66 F.4th 905, 947 (11th Cir. 2023).

The Information Retention Ban broadly prohibits "retain[ing] a voter's personal information" "for any reason other than to provide such application or information to the [3PVRO] in compliance with this section." Fla. Stat. § 97.0575(7). Both the phrases "personal information" and "in compliance with this section" are unconstitutionally vague because they "fail[] to provide people of ordinary intelligence a reasonable opportunity to understand what conduct [is] prohibit[ed]," and they enable "arbitrary and discriminatory enforcement." *Wollschlaeger v. Governor, Fla.*, 848 F.3d 1293, 1319 (11th Cir. 2017) (en banc) (Marcus, J.) (quoting *Hill v. Colorado*, 530 U.S. 703, 732 (2000)). The standard of clarity for laws that impose criminal penalties is "even higher." *Kolender v. Lawson*, 461 U.S. 352, 358 n.8 (1983). This concern is especially heightened where, as here, the law lacks a scienter requirement. *See Village of Hoffman Estates v. Flipside,*

*Hoffman Ests., Inc.*, 455 U.S. 489, 499 (1982), (noting the Court has recognized that a scienter requirement may mitigate a law's vagueness).[10]

As the district court correctly found, the Information Retention Ban is vague as to whom the provision applies, which information falls within its reach, and what persons are prohibited from doing with retained information. App., Dkt. 32-7, at 156. And because inadvertently violating the Ban is a third-degree felony, the consequences of guessing wrong on any of these elements "include arrest, prosecution, and ultimately a felony conviction"—penalties that the State conceded at the preliminary injunction hearing are "a pretty big deal." App., Dkt. 32-7, at 165; App., Dkt. 32-8, at 143–44.

The State relies upon *League of Women Voters of Florida*, 66 F.4th at 946 to contend that because *some* conduct is clearly prohibited by the statute, the Information Ban has an "understandable core" and thus cannot be considered unconstitutionally vague. Br. at 21. This argument is based on a blatant misreading

---

[10] Vague laws are also especially pernicious in the First Amendment context, as they "force potential speakers to steer far wider of the unlawful zone than if the boundaries of the forbidden areas were clearly marked." *Wollschlaeger*, 848 F.3d at 1320 (11th Cir. 2017) (cleaned up). In this way, vague laws have a wide-ranging chilling effect on disfavored speech without expressly banning it. Thus, "standards of permissible statutory vagueness are strict in the area of free expression." *NAACP v. Button*, 371 U.S. 415, 432 (1963). The district court did not reach this additional vagueness argument, finding that "because the challenged provision runs afoul of the Due Process Clause's fair notice requirement for criminal statutes, this Court need not determine if it would likewise violate the more stringent vagueness standard for laws that interfere with First Amendment rights." App., Dkt. 32-7, at 165.

of binding precedent. The "no core" language the State cites originated from a Supreme Court case evaluating a prohibition on "treat[ing] contemptuously the flag of the United States." *Smith v. Goguen*, 415 U.S. 566, 578 (1974); *see League of Women Voters of Florida*, 66 F.4th at 946 (citing *High Ol' Times, Inc. v. Busbee*, 673 F.2d 1225, 1228 (11th Cir. 1982) (citing *Smith*, 415 U.S. at 578)). In *Smith*, the Court held that the statute was unconstitutionally vague, even though some actions, such as lighting a flag on fire, would clearly violate the law. *Id.* at 582; *see also Johnson v. United States*, 576 U.S. 591, 602 (2015) (noting "our holdings squarely contradict the theory that a vague provision is constitutional merely because there is some conduct that clearly falls within the provision's grasp" and collecting cases).

This Court's recent decision in *League of Women Voters of Florida* does not contradict this binding Supreme Court precedent. The *League* decision relies upon *Village of Hoffman Estates v. Flipside*, where the Supreme Court established that "vagueness standards should not, of course, be mechanically applied" because the "degree of vagueness that the Constitution tolerates—as well as the relative importance of fair notice and fair enforcement—depends in part on the nature of the enactment." 455 U.S. at 498. The Court then noted the types of laws that require greater precision, explaining that the "Court has [] expressed greater tolerance of enactments with civil rather than criminal penalties because the consequences of imprecision are qualitatively less severe." *Id.* The solicitation law at issue in the

*League* case imposed misdemeanor criminal penalties, and the Court ultimately found it unconstitutionally vague; the Information Retention Ban imposes felony criminal penalties, so even less vagueness is tolerated. In short, the State's reliance on the "no core" language does nothing to shift the legal analysis applied by the district court that considered "the nature of the enactment" when assessing the "degree of vagueness."[11]

A plain reading of the statutory language lays bare its ambiguity. First, the term "personal information" is left nebulous and undefined in the Information Retention Ban. Not only do Florida statutes typically define "personal information" when employing the term, they do so in varied ways. *See, e.g.*, Fla. Stat. § 501.171(1)(g) (defining personal information to include social security number, driver's license number, financial accounts, and medical history); *id.* § 119.0712(2)(b) (referencing 18 U.S.C. § 2725) (defining personal information as a person's photograph, social security number, and medical information); *see also id.* § 322.143(1)(a) (including name, address, date of birth, and driver's license

---

[11] The State does not argue that *Salerno*'s no-set-of-circumstances argument applies to Plaintiffs vagueness challenge, and for good reason. The Supreme Court and this Circuit have declined to apply this standard to vagueness challenges. *See Johnson v. United States*, 576 U.S. 591, 602 (2015); *see also Horton v. City of St. Augustine, Fla.*, 272 F.3d 1318, 1330 (11th Cir. 2001); *United States v. Di Pietro*, 615 F.3d 1369, 1371 n.2 (11th Cir. 2010).

number in definition of "personal information"). There is thus no universal definition of "personal information" under Florida law.

The State argues that the "illustrative" list provided in the statutory text of the Ban provides sufficient guidance of what constitutes "personal information," particularly because these examples are also excluded from disclosure under Florida's public record laws. Br. at 25. But as the district court recognized, "had the Florida Legislature intended to include only 'private' or 'non-public information,' it could have said so directly." App., Dkt. 32-7, at 163. Similarly, had the Legislature intended to limit "personal information" to only the examples enumerated, it could have done so. *See Ali v. Fed. Bureau of Prisons*, 552 U.S. 214, 227 (2008) (declining to apply limiting principles where statute "includes a specific example along with a general phrase"). Additionally, while government officials like Appellants may be familiar with the requirements of Florida's public records laws, the Legislature did not see fit to import those standards into the Information Retention Ban, and the State offers no basis why a reasonable person would think to line up the Ban's broad prohibition against the State's public record disclosure requirements to determine what types of information are safe to retain.[12]

_____

[12] The State has implemented a new administrative rule that provides a definition of "personal information," Br. at 9, but rulemaking cannot save a vague statute. Florida law prohibits courts from "deferr[ing] to an administrative agency's interpretation of [a] statute"; they "must instead interpret such statute or rule de novo." Fla. Const.

Second, the Information Retention Ban's qualification that personal information may only be retained or copied "in compliance with this section" Fla. Stat. § 97.0575(7), only introduces more confusion. This language fails to clarify what information can be permissibly retained, what activities comply with the section, and to whom the limitations apply. As the district court's analysis makes clear, the phrase raises more questions than answers:

> Is it limited solely to folks who are directly engaging with voters and collecting completed applications from them? Or does it apply to anyone further up the chain who would retain voter information for get-out-the-vote purposes? What about a 3PVRO employee who collects completed applications from volunteers in the community?

App., Dkt. 32-7, at 159–60.

The State contends that the provision allows a voter's personal information to be retained while "turning the applications over to the 3PVRO for delivery to the appropriate elections official within the time afforded by the statute," Br. at 27, but as the district court acknowledged, that does not solve the associated ambiguities "as it fails to address what individuals working for the 3PVRO may do with the voter registration applications or voter information once they receive it from those individuals who collected it directly from voters," App., Dkt. 32-7, at 161–62. 3PVROs have no clarity on whether they may copy and retain personal information

---

art. V, § 21; *see also* App., Dkt. 32-7, at 157 (rejecting State's argument that they can "clarify" a statute because "[r]ewriting the laws it enforces is not within the purview of the executive branch").

to track whether voter registration forms have been accepted, or to defend themselves from allegations of misconduct like late-returned applications. Equally uncertain is whether some personal information may be used for any purpose related to a 3PVRO's registration and get-out-the-vote work more broadly. Again, Plaintiffs and their canvassers are left to guess, and the State has unfettered discretion to impose arbitrary and inconsistent punishments. *See City of Chicago v. Morales*, 527 U.S. 41, 58 (1999).

The State points to its now-final rule, Fla. Admin. Code 1S-2.042(5)(f), as supportive of its narrow interpretation that "in compliance with this section" means individuals' delivery of voter registration applications to elections officials. Br. at 26–28.  In declining to credit the State's construction, the district court noted that the next provision of the proposed rule, Fla. Admin. Code 1S-2.042(5)(g), prevents both individuals *and* 3PVROs from retaining information, even though the text of the statute addresses only individuals. App., Dkt. 32-7, at 162. While the State contends that the rule is "a reasonable extension" of the retention provision, Br. at 29, such rulemaking must still be consistent with the text of the Information Retention Ban, *Campus Commc'ns, Inc. v. Dep't of Revenue*, 473 So. 2d 1290, 1291 n.1 (Fla. 1985) ("It is axiomatic that an administrative rule cannot enlarge, modify or contravene the provisions of a statute."). The district court was not opining on the Secretary's rulemaking authority but instead recognized that the Secretary's

33

expansive interpretation of the Ban in its own rule further evidences the text's ambiguity for a person of ordinary intelligence.

Because the undefined and broad terms in the Information Retention Ban fail to provide sufficient notice and lend themselves to discriminatory application, the district court correctly found that the law was unconstitutionally vague.

## II. The district court correctly found the other preliminary injunction factors weighed in favor of granting preliminary relief.

Plaintiffs will suffer immediate and irreparable harm if the injunction is lifted because their voter registration activities and get-out-the-vote missions will be substantially impaired, and the public interest strongly favors keeping it in place to prevent state enforcement of an unconstitutional law. The district court thus found as a matter of fact that the balance of the equities warranted injunctive relief. App., Dkt. 32-7, at 167. Indeed, because the State does not contest the district court's findings in this regard, Plaintiffs' satisfaction of the remaining preliminary injunction factors is beyond dispute in this appeal. *See Sapuppo*, 739 F.3d at 681; *United States v. Magluta*, 418 F.3d 1166, 1185 (11th Cir. 2005) (ruling that a party abandons an argument if it fails to raise the argument in its initial brief).

### A. The district court correctly found that Plaintiffs will suffer irreparable harm absent injunctive relief.

There is no dispute that Plaintiffs will be irreparably harmed by the Citizenship Requirement and the Information Retention Ban absent an injunction.

### 1.    The Citizenship Requirement will cause Plaintiffs irreparable harm.

Absent the requested relief, noncitizens including Plaintiff Esperanza Sánchez will immediately be prohibited from working with 3PVROs to help register voters, disrupting and injuring both individual and organizational Plaintiffs and the communities they serve. As one legislator explained, if he were a noncitizen, he would not even risk touching a voter registration application once the Citizenship Requirement takes effect. App., Dkt. 32-1, at 194.

This change will cause individual Plaintiffs "irreparable injury because their voter registration efforts will be substantially interrupted," as the district court correctly recognized. App., Dkt. 32-7, at 167. Individual Plaintiffs will lose their ability to register new voters and potentially their jobs. App., Dkt. 32-1, at 245; App., Dkt. 32-2, at 29.

Organizational Plaintiffs, in turn, will lose many employees and canvassers because they will be unable to have their noncitizen canvassers assist in their voter registration efforts. App., Dkt. 32-1, at 217, 227; App., Dkt. 32-2, at 13, 37. For instance, 66% of UnidosUS's canvassers in 2022 were noncitizens. App., Dkt. 32-1, at 214. And approximately 60-75% of Alianza's canvassers during an election cycle are legal noncitizen residents, supervised and trained by two noncitizen employees; that number increases to 90-100% during the off season, where voter registration activity slows. App., Dkt. 32-2, at 13. The loss of these employees and

35

canvassers will weaken—and in some cases decimate—these organizations' ability to maintain voter registration programs. App., Dkt. 32-1, at 217–20, 227–28, 245–46 ("Without non-citizen canvassers, I don't know how UnidosUS will be able to carry out its voter registration efforts."); App., Dkt. 32-2, at 29–30 ("I don't think I would be able to find sufficient canvassers who are citizens to rebuild my team.").

### 2. The Information Retention Ban will cause Plaintiffs irreparable harm.

The Information Retention Ban will cause Plaintiffs irreparable injury because, as the district court recognized, "their voter registration efforts will be substantially interrupted." App., Dkt. 32-7, at 166. Plaintiffs Florida NAACP, VOT, DRF, Alianza, and UnidosUS will suffer irreparable harm because they retain voters' information as part of their constitutionally protected get-out-the-vote and organizing work. App., Dkt. 32-1, at 217–18; App., Dkt. 32-2, at 12–13. Retaining voter information is crucial to organizational Plaintiffs' ability to engage and maintain relationships with voters they help register, to ensure that these voters have access to the polls and actually vote, and to communicate their pro-voting message. Further, these Plaintiffs may lose canvassers who are crucial to their work because those canvassers risk a felony charge if they fail to comply with the Information Retention Ban. App., Dkt. 32-2, at 16.

**B.     The district court correctly found that the balance of equities weighs in Plaintiffs' favor.**

The district court did not clearly err in determining that Plaintiffs satisfied the balance of equities. App., Dkt. 32-7, at 167. "The third and fourth factors—damage to the opposing party and the public interest—can be consolidated because the nonmovant is the government." *NetChoice, LLC v. Att'y Gen., Fla.,* 34 F.4th 1196, 1231 (11th Cir. 2022). Here, the public interest is greatly served by ensuring Plaintiffs will be able to continue their constitutionally protected civic engagement, focused on reaching "marginalized voters who have traditionally lacked that kind of connection and access to the state." App., Dkt. 32-8, at 156. And the State will suffer no harm if these provisions are temporarily enjoined, as there is no interest in enforcing unconstitutional laws. *See* App., Dkt. 32-7, at 168 (quoting *KH Outdoor, LLC v. City of Trussville*, 458 F.3d 1261, 1272 (11th Cir. 2006) (Defendant "has no legitimate interest in enforcing an unconstitutional ordinance" and the "public has no interest in enforcing an unconstitutional ordinance")); *see also Otto v. City of Boca Raton*, 981 F.3d 854, 870 (11th Cir. 2020) ("[I]t is clear that neither the government nor the public has any legitimate interest in enforcing an unconstitutional [law]."). Further, "the public interest is served when constitutional rights are protected." *Democratic Exec. Comm. of Fla. v. Lee*, 915 F.3d 1312, 1327 (11th Cir. 2019).

*     *     *

37

The Citizenship Requirement's impact on noncitizens engaging in voter registration activity is self-evident. Noncitizens' work, moreover, is vital to the operations of Plaintiff 3PVROs, in which noncitizens form an integral part of the organizations' members, canvassers, and employees. Retaining voter contact information is also essential to Plaintiff 3PVROs' civic engagement, particularly their get-out-the-vote efforts. The Information Retention Ban's threat of criminal penalties all but ensures that these organizations will be unable to engage with the voters they register to promote their pro-voting message. These blanket provisions will have immediate and serious harm on 3PVROs' operations without any benefit to any state or public interest. The State does not contend otherwise. Accordingly, the district court's preliminary injunction must remain in place.

## CONCLUSION

The Court should affirm the district court's order granting Plaintiffs' motion for preliminary injunction.

Dated: November 13, 2023

Respectfully submitted,

/s/ *Frederick S. Wermuth*

Abha Khanna
Makeba Rutahindurwa
**ELIAS LAW GROUP LLP**
1700 Seventh Ave., Suite 2100
Seattle, Washington 98101
Telephone: (206) 656-0177

Frederick S. Wermuth
Florida Bar No. 0184111
**King, Blackwell, Zehnder**
**& Wermuth, P.A.**
P.O. Box 1631
Orlando, FL 32802-1631

akhanna@elias.law
mrutahindurwa@elias.law

Lalitha D. Madduri
Melinda Johnson
Renata O'Donnell
**ELIAS LAW GROUP LLP**
250 Massachusetts Ave NW, Suite 400
Washington, D.C. 20001
Telephone: (202) 968-4490
lmadduri@elias.law
mjohnson@elias.law
rodonnell@elias.law

Telephone: (407) 422-2472
Facsimile: (407) 648-0161
fwermuth@kbzwlaw.com

*Counsel for Plaintiffs-Appellees Florida State Conference of Branches of Youth Units of the NAACP, Voters of Tomorrow Action, Inc., Disability Rights Florida, Alianza for Progress, Alianza Center, UnidosUS, Florida Alliance for Retired Americans, Santiago Mayer Artasanchez, and Esperanza Sánchez*

## CERTIFICATE OF COMPLIANCE

This response complies with Fed. R. App. P. 32(a)(7) because it contains 9,007 words, excluding the parts that may be excluded. This response also complies with Fed. R. App. P. 32(a)(5) and (6) because it has been prepared in a proportionally spaced typeface, 14-point Times New Roman.

Dated: November 13, 2023

/s/ *Frederick S. Wermuth*

## CERTIFICATE OF SERVICE

This response has been filed by CM/ECF and served via CM/ECF on all counsel of record.

Dated: November 13, 2023

/s/ *Frederick S. Wermuth*